UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KEVIN ROHN GILL,

    Plaintiff,

v.

ROMEO ARANAS, et al.,

    Defendants.

Case No. 3:17-cv-00159-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

This case involves a civil rights action filed by Plaintiff Kevin Rohn Gill, ("Gill"), against Defendants Romeo Aranas ("Aranas"), Joseph Walls ("Walls"), and John Does one (1) through ten (10) (collectively referred to as "Defendants"). Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 71, 73).[2] Gill responded (ECF No. 78), and Defendants replied (ECF No. 80). Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 71) be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Gill is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC"), housed at the Northern Nevada Correctional Center ("NNCC") where the events described in his complaint allegedly occurred. (*See* ECF No. 37 at 1). On May 2, 2019, proceeding *pro se*, Gill submitted his Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983, which he signed and verified, under penalty of perjury, acknowledging the facts and information contained in the complaint were "true and correct." (ECF No. 37 at 13). Pursuant to 28 U.S.C. § 1915A(a), the court screened Gill's

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF No. 73 consists of sealed exhibits filed in support of the motion for summary judgment.

SAC on April 10, 2019 and issued a screening order allowing Gill to proceed on portions of his Eighth Amendment deliberate indifference to serious medical needs against Defendants Aranas and Walls. (ECF No. 33 at 10).[3]

### A. Gill's Deliberate Indifference Claim[4]

Gill's SAC, in relevant part, alleges the following: On September 3, 2014, Defendant Walls, an orthopedic specialist, examined Gill and determined he had a degenerative hip condition. (ECF No. 37 at 5). However, Walls allegedly told Gill he did not need treatment because his x-rays were not as bad as some other prisoners and Walls "gets paid" whether or not Gill received surgery. (Id.) Gill further alleges, despite seeing him in great pain, Walls declined to prescribe a painkiller more effective than Ibuprofen. (Id.) Gill then submitted two grievances regarding his pain, one in October 2014 (ID No. 2006-29-83723) and one in May 2015 (ID No. 2006-30-01063). (Id.; see ECF No. 1-1 at 16-34).

On August 8, 2015, Defendant Aranas denied Gill's grievance despite Aranas's alleged knowledge that Gill was in "chronic pain." (Id. at 6; see ECF No. 1-1 at 16). Gill further alleges Aranas was responsible for examining patients and prescribing medication but Aranas did neither of those things. (Id.) Gill further alleges that although non-defendant Dr. Johns scheduled Gill to be transferred to the High Desert State Prison ("HDSP") for medical care, Aranas failed to transfer him in a timely fashion, delaying his surgery. (Id.) Although Gill eventually received hip replacement surgery in 2017, he alleges Defendants refused to provide him with effective pain medication between late 2014 and early 2016, inflicting pain upon him without penological justification. (Id. at 7).

---

[3] Gill also named multiple other defendants in his SAC. (ECF No. 37 at 2-3). However, the court dismissed those defendants without prejudice. (See ECF Nos.33 and 36). Gill also named John Does one (1) through ten (10) in his complaint. (See ECF No. 37 at 7). However, the court recommends Defendants John Does one (1) through ten (10) be dismissed because Gill has failed to identify those defendants. (See ECF No. 68, setting the extended discovery deadline at March 9, 2020).

[4] The facts as stated herein are taken from the allegations asserted in the Complaint unless noted otherwise.

Gill further alleges Defendants knew of, and disregarded, a substantial risk to his health by refusing to provide such medication. (*Id.*) Gill further alleges Defendants delayed his surgery in disregard of a substantial risk to his health. (*Id.* at 7-8). On March 15, 2017, Gill filed his initial complaint. (*See* ECF No. 1-1). Gill's SAC requests the following relief: (1) declaratory relief ("[t]hat Defendants violated [Gill's] Eighth Amendment right[s]"); (2) compensatory damages in the amount of $100.00 per day that surgery was delayed and $1,000,000.00 ("for hedonic losses and permanent handicap"); and (3) punitive damages ("TBD at trial"). (ECF No. 37 at 13).

### B. Defendants' Motion for Summary Judgment

On April 8, 2020, Defendants filed a motion for summary judgment (ECF Nos. 71, 73). Defendants argue they are entitled to summary judgment because Gill failed to exhaust his administrative remedies, Defendants were not deliberately indifferent to Gill, and alternatively, Defendants are entitled to qualified immunity. (ECF No. 71 at 4-9). Gill opposed the motion, (ECF No. 78), and Defendants replied (ECF No. 80). The recommended disposition follows.

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire*

& *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III. DISCUSSION**

    **A.    Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290

4

(1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B.     Exhaustion of Administrative Remedies

Defendants argue Gill's deliberate indifference claim fails as a matter of law because he failed to exhaust his administrative remedies. (ECF No. 71 at 7). Specifically, Defendants assert his claims must be dismissed pursuant to the Prison Litigation Reform Act of 1995 ("PLRA") because he "never filed a grievance regarding the delay in his transfer to HDSP." (*Id.*) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Jones,* 549 U.S. at 218). The defendants bear the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

Having reviewed the record, the court rejects Defendants' exhaustion argument. Here, Gill exhausted his administrative remedy regarding grievance ID Nos. 2006-29-

83723 and 2006-30-01063. (*See* ECF No. 1-1 at 16-34). Grievance ID No. 2006-29-83723 stated Gill was in excruciating pain, that NDOC medical providers were giving him the "run-around" and that the kiting procedures were a "revolving door" that failed to provide relief for his severe back and hip pain. (*Id.* at 31-34). It further stated Walls would not listen to Gill about his pain levels at their September 2014 appointment and instead read out Gill's medical chart and told Gill that he "gets paid" whether or not Gill received surgery. (*Id.* at 28-29). Grievance ID No. 2006-30-01063 stated that Gill's condition was worsening and that Dr. Johns told him the medication he was on may have been doing more harm than good. (*Id.* at 20-25). It also stated he was experiencing excruciating pain and numbness and that he was told to continue taking medications he had problems with. (*Id.*) It further stated Gill had been taken off Tegretol by Johns and despite making "almost every pill call," he was taken off Tylenol and Ibuprofen for noncompliance. (*Id.* at 17-19).

The administrative remedy regarding both of those grievances was exhausted because they received second level responses in accordance with NDOC Administrative Regulation 740. (*See id.* at 16 and 27); *see also Reyes*, 810 F.3d at 657. Further, Gill's two grievances, while not specifically referencing his transfer to HDSP, allege both a delay in surgery and a failure to provide adequate pain medications. (*See id.* at 16-34). "A grievance need not include legal terminology or . . . . contain every fact necessary to prove each element of a legal claim." *Griffin*, 557 F.3d at 1120. Construing Gill's claims in the light most favorable to him, Gill's two grievances were sufficient to put Defendants on notice that he wanted additional attention paid to his serious medical needs. *See Jones*, 549 U.S. at 219 (stating the purpose of grievances is to alert prison officials to a problem, including potential constitutional violations, not to notice officials of all future bases for litigation) (internal citations omitted). Thus, even if Gill did not specifically exhaust his remedy regarding Defendants' failure to transfer him to HDSP, summary judgment cannot be appropriately granted on that basis alone. Under the PLRA, where some claims are exhausted and others are not, courts may not dispose of the "good" claims along with the "bad" ones. *Id.* at 220-22. Accordingly, Defendants' exhaustion argument fails and the

court will address Gill's deliberate indifference claim below.

### C. Gill's Deliberate Indifference to Serious Medical Needs Claim

Next, Defendants argue that Gill's claims pursuant to the Eighth Amendment fail on the merits because there is no evidence in the record to support a finding that Defendants were indifferent to his medical needs. (ECF No. 71 at 4-7). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 106.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she

"knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted) (*see Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("[M]ere malpractice, or even gross negligence" in the provision of care fails to state a deliberate indifference claim).

A difference of opinion between a physician and a prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986). Instead, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (overruled, in part, on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)) (quoting *Jackson*, 90 F.3d at 332). A "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 406-07 (9th Cir. 1985) (finding that the failure of prison authorities to respond to cumulative, repeated demands for surgery did not itself constitute deliberate indifference).

In this case, it is undisputed that Gill's arthritic hip that required surgery constituted a serious medical need. *See Colwell*, 763 F.3d at 1066. Therefore, the objective element is not contested. Rather, the only issue is whether there is sufficient evidence to create a genuine issue of fact as to the subjective element – i.e., whether there is any evidence

to establish that Defendants knew of and disregarded "an excessive risk to [Gill's] health and safety." *Toguchi*, 391 F.3d at 1057. Defendants argue they are entitled to summary judgment because the evidentiary record shows neither Defendant was deliberately indifferent to Gill's medical needs. (ECF No. 71 at 4-7).

Based on the evidence before the court, Defendants have, with authenticated evidence, shown that the record forecloses the possibility of a reasonable jury finding in Gill's favor. *Celotex*, 477 U.S. at 323. Therefore, Defendants have met their initial burden on summary judgment. Accordingly, the burden shifts to Gill to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387. Gill has not met his burden.

Although Gill attached grievances, discovery responses, and portions of Defendant Aranas's job description to his SAC and his opposition (*See* ECF Nos. 1-1, 52, and 78), he has failed to produce any evidence Defendants were deliberately indifferent to his serious medical needs. Therefore, even when viewing all facts and drawing all inferences in the light most favorable to Gill, the court finds summary judgment should be granted in favor of Defendants on Gill's deliberate indifference claim.

### 1. Defendant Aranas

Gill alleges Defendant Aranas was deliberately indifferent to his serious medical needs because he denied grievances in late 2014 and mid-2015. (ECF No. 37 at 5-6). Specifically, Gill alleges Aranas failed to examine him or to provide him with medication for his hip that eventually needed surgical repair and that he delayed Gill's treatment by failing to allow him to transfer to HDSP to receive medical care. (*Id.* at 6). However, Gill has offered no evidence to show Aranas failed to examine him or to provide him with pain medication, or to prevent his transfer to HDSP.

Moreover, contrary to Gill's allegations, Defendants' evidence shows Gill was repeatedly examined and provided pain medication during the very time period he claims, without evidence, that Aranas failed to examine him or provide with pain medication. Although Gill's Tegretol was discontinued in June 2015, he was still provided both Tylenol

and Ibuprofen. (ECF No. 71-2 at 7). Further, during the time period Aranas was allegedly indifferent to Gill's hip pain, he was seen for his hip pain multiple times by doctors and specialists. (*Id.* at 3, 5). By the time Defendant Aranas responded to Gill's second-level grievance on August 7, 2015, Gill had been seen by medical providers on at least ten (10) separate dates since he submitted the informal grievance regarding his pain medication. (*See id.* at 5). During that same timeframe, Gill saw two orthopedic specialists and received an x-ray on his hip. (*See id.*). Thus, the undisputed evidence shows Aranas did not fail to examine Gill or provide him with pain medications.

In fact, there is no evidence that has been presented to establish Aranas was involved in Gill's treatment in any way. Rather, the sole piece of evidence Gill has pointed to indicating the involvement of Aranas in this matter in any capacity whatsoever are the denials of Gill's escalating pain medication grievances. (ECF No. 1-1 at 16 and 27). Merely responding to Gill's grievances, without more, is insufficient to establish Aranas was personally indifferent to Gill's medical needs. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (simply reviewing or processing appeals, without more, cannot create liability for prison officials under § 1983) (citing *Mann v. Adams*, 855 F.2d 639, 649 (9th Cir. 1988).

As to the allegations regarding Gill's transfer, Defendants provided a sworn, authenticated affidavit from Defendant Aranas wherein he states he never received any grievance or notice that Gill was to be transferred to HDSP for medical care. (ECF No. 71-3 at 3). By contrast, Gill has offered no evidence to contradict those sworn statements or to create an issue of fact that Defendant Aranas prevented Gill's transfer to HDSP or received notice that Gill should have been transferred to HDSP. Accordingly, Defendant Aranas is entitled to summary judgement regarding Gill's deliberate indifference to serious medical needs claim.

### 2. Defendant Walls

Next, Gill alleges Defendant Walls was deliberately indifferent to his serious medical needs because he improperly delayed Gill's surgery, and because he failed to

provide Gill with effective pain medication. (ECF No. 37 at 5). Here again, Gill has provided no evidence Walls delayed his surgery or that he failed to provide adequate pain medication. Conversely, Defendants' evidence shows Walls saw Gill for his hip pain on September 3, 2014, and that Gill stated he wanted an MRI but that he did not want surgery. (ECF No. 73-1 at 2). During that same time period, Gill was examined by two orthopedic surgeons (Walls and non-defendant Dr. Long), both of whom agreed surgery was not necessary. (ECF No. 71-1 at 3). As already noted above, the undisputed evidence shows Gill received pain medication during the time he alleges Walls was deliberately indifferent to his pain. (See ECF No. 71-2 at 7).

As to Defendant Walls's alleged delay of Gill's surgery, Gill has provided no evidence Walls was personally responsible for any delay in his surgery or treatment. See McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992) (finding that grant of summary judgment was appropriate where plaintiff failed to show defendants were individually responsible for scheduling or performing of diagnostics or surgery). Rather, Defendants' evidence shows that in 2014, two orthopedic surgeons examined Gill and determined surgery was not necessary. (See ECF No. 71-1 at 3). By the time another doctor determined Gill needed surgery, roughly two years later, Walls was no longer treating him. (See ECF No. 37). Consequently, Gill cannot establish Walls was personally responsible for any delay in surgery or treatment. Furthermore, to the extent Gill alleges Walls delayed his surgery, a "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." Shapley, 766 F.2d at 406-07. Rather, Gill must show that Walls knew of and disregarded "an excessive risk to [Gill's] health and safety." Toguchi, 391 F.3d at 1057. Gill has provided no evidence Walls knew of or disregarded any risk to his health or safety.

Although Gill alleges the treatment he received from Defendants was inadequate, Gill has failed to provide evidence creating a genuine dispute whether that medical treatment was appropriate. See Taplet v. Brooks, 432 Fed. Appx. 697, 698 (9th Cir. 2011) (finding that Plaintiff's own allegations, unsupported by expert testimony, were insufficient

to create a dispute of fact over whether care was medically acceptable) (citing *Clouthier v. Cnty. Of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010) (overruled, in part, on other grounds by *Castro v. Cnty. Of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). Therefore, Gill's opinions about the care he received from Defendants are not evidence that Defendants' care was improper.

Further, while Gill alleges he should have received surgery before 2017 and other doctors told him he should have had surgery earlier, a difference of opinion between a physician and a prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference. *Wilhelm*, 680 F.3d at 1122. Instead, Gill "must show that the course of treatment [Walls] chose was medically unacceptable under the circumstances and that [Walls] chose this course in conscious disregard of an excessive risk to [Gill's] health." *Snow*, 681 F.3d at 988. Gill has provided no evidence that would make such a showing. Accordingly, Defendant Walls is entitled to summary judgement as to Gill's deliberate indifference to serious medical needs claim.[5]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 71) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

---

[5] Where the court determines a plaintiff's allegations fail to show a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Gill is unable to establish a violation of his rights under the United States Constitution. Accordingly, there is no need to further discuss qualified immunity.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 71) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the John Does one (1) through ten (10) be **DISMISSED**; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly.

**DATED:** July 27, 2020

_____
UNITED STATES MAGISTRATE JUDGE